PAMELA O'LEARY TOWER  #6152

1330 Pacific Tower

1001 Bishop Street

Honolulu, HI  96813

Telephone: (808) 526-9500

Facsimile: (808) 533-4588

Email: pamelatower@earthlink.net

Attorney for Defendant LANGAMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00070 DAE |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | OBJECTION TO DRAFT |
| | ) | PRESENTENCE REPORT |
| DAN LANGAMAN, | ) | PREPARED APRIL 10, 2006; |
| | ) | CERTIFICATE OF SERVICE |
| Defendant. | ) | |
| _____ | ) | |

OBJECTION TO DRAFT PRESENTENCE REPORT
PREPARED APRIL 10, 2006

COMES NOW Defendant, DAN LANGAMAN, by and through his counsel,

PAMELA O'LEARY TOWER, and hereby makes the following

objections/corrections to the draft pre-sentence investigation report (hereafter

"Draft PSR") prepared April 10, 2006, by United States Probation Officer Mona

Godinet.

Objections:

Paragraph 64 – <u>Adjustment for Role in the Offense</u>

Defendant objects to the 4-level upward adjustment of his offense level based upon his alleged managerial role.  The probation officer states:

> The evidence indicates, by a preponderance, that the defendant was an "organizer, leader, manager, or supervisor" within the meaning of U.S.S.G. § 3B1.1(c). In this regard, the defendant acknowledged that between September 2003 and approximately March 2005, he arranged to have FedEx parcels containing approximately 50 pounds of methamphetamine from California and Las Vegas to Hawaii for distribution. Based on the amount of methamphetamine recovered and statements by his co-conspirators, he had a managerial role in the conspiracy. He also recruited and directed Moore and at least five others in the shipping, receipt, distribution, and/or payment of the drugs upon its arrival in Hawaii, and paid these individuals for their assistance. The defendant also claimed a larger share of the drug proceeds. These factors establish that the defendant had a high degree of decision making authority in planning and organizing the offense and a high degree of control and authority over others.

It must first be noted that the amount of drugs to which defendant admitted in his plea agreement is not an indicator for role in an offense.  It is simply a fact. In every drug organization involving Hawaii, someone procures the drugs to be shipped to Hawaii for distribution. Thus 50 pounds of methamphetamine is simply the amount procured and shipped or caused to be shipped by defendant to Hawaii during the course of the conspiracy at issue here.  The amount of drugs is a neutral factor.

It is true that during its nascence, Defendant did ask his sister and coconspirator, Pearly Moore, to assist him in the enterprise.  Ms. Moore willingly did so and was paid well for her services.   After her husband left for a tour of duty in Iraq, Ms. Moore, sensing the potential for a quick and easy financial windfall, willingly insinuated herself further into her brother's drug operation and began to assume a larger and more responsible role.  Such was her work ethic that Ms. Moore took the initiative to establish her own private drug organization by procuring ice from Isael Perez, whose son, Henry Soto, was defendant's source, all the while assuring her brother (and Soto) that she was loyal.  Defendant eventually sold his stake in the drug business and moved to California and later Nevada. Abhorring a vacuum, Pearly Moore filled that void and assumed the leadership role, accepting the occasional package shipped by defendant to her *upon her request*, but relying in the main on the multiple packages of ice provided to her by Isael Perez, her "shadow" source.   Indeed, Ms. Moore was doing so well, and defendant not so, that for a period of four to six months, while he and his family struggled to live in Delano, California, Ms. Moore sent him between $800 and$1000 a month for the "children." [1]

---

[1] Ms. Moore was not assessed any upward adjustment for her role in this offense.  Having already been sentenced to 63 months, this unfortunate oversight cannot be corrected.

While it is true that Defendant set up the organization, Ms. Moore quickly displayed her business acumen by establishing her own private "side business" behind her brother's back.  Ms. Moore organized the procurement, mailing and delivery of all the ice she obtained from Perez (without her brother's knowledge) by directing,  supervising and paying the same people utilized by her brother and her in "their" business to do *her* business exclusively.  Given Pearly Moore's drive to succeed and her willingness to go to any lengths to do so, it is clear that after a certain point, Moore "claimed a larger share of the drug proceeds; Moore had a high[er] degree of decision making authority in planning and organizing the offense and Moore exercised control and authority over others."

Given the shifting nature of the roles played by defendant and his sister, who was no shrinking violet in this conspiracy, a four level increase for managerial role under the circumstances of this case is clearly inappropriate. However, because Defendant did, from time to time, play a more significant role than some of his co-conspirators he is willing to concede that an upward adjustment of two levels for his role is entirely warranted.

DATED: Honolulu, Hawaii, April 24, 2006.

_____
/s/ PAMELA O'LEARY TOWER
Attorney for DAN LANGAMAN

4

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was

duly served upon the following at their last known address:

Served Electronically through CM/ECF:


BEVERLY WEE-SAMESHIMA    Beverly.Sameshima@usdoj.gov
Assistant United States Attorney
PJKK Federal Building, Room 6100
300 Ala Moana Boulevard
Honolulu, Hawaii 96813
Attorney for the United States


Served by Hand Delivery:


U.S. PROBATION OFFICE
Attn: MONA GODINET
PJKK Federal Building,  Room C-110
300 Ala Moana Blvd.
Honolulu, Hawaii 96850


DATED:    Honolulu, Hawaii, April 24, 2006.


_____
/s/ PAMELA O'LEARY TOWER
Attorney for DAN LANGAMAN